**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GERMAN CRUZ GARCIA,

      *Plaintiff*,

v.

GGI GLASS DISTRIBUTION CORP. et al.,

      *Defendants*,

Civil Action No. 22-632 (TJK)

## <u>MEMORANDUM OPINION & ORDER</u>

In January 2019, four companies were renovating an office building. The subcontractor in charge of installing glass worked with two companies to acquire the glass panels needed for the job: one manufactured and delivered the glass, and another unloaded it at the job site. German Cruz Garcia was working for the unloading company when, after his team had removed most of the glass panels from the delivery truck, several fell on and injured him. He sued the subcontractor (Adotta) and the glass-delivery company (GGI Glass), which in turn filed a third-party claim against the general contractor (Rand). The crux of Garcia's suit is his contention that the accident happened because the delivery truck was negligently parked on a sloped surface.

Adotta and GGI Glass each moved for summary judgment on Garcia's remaining claims for negligence and negligence per se. Declining to oppose any of Adotta's arguments, Garcia seems to have given up on his claims against that company. And although the Court may not treat an unopposed summary-judgment motion as conceded, it will grant Adotta's motion because the undisputed facts show that Adotta satisfied any limited duty that it might have owed Garcia. Nor could a reasonable jury find for Garcia on a theory of negligence per se against either Adotta or GGI Glass.

But GGI Glass owed Garcia a duty of reasonable care, and a rational jury could find that the company caused his injuries by breaching it. Garcia and the unloading team were not just foreseeable victims of negligent glass delivery—they were the *most* foreseeable victims because, as GGI Glass emphasizes, the company expected others to unload the glass from its truck. Nor does Garcia need expert testimony to present his negligence claim to a jury, which can use common sense and experience to assess whether a company delivering heavy glass deviated from the standard of care by parking on an unlevel surface. And disputed factual issues preclude summary judgment on contributory negligence. Finally, Rand tries to eliminate the source of its potential liability to GGI Glass by piggybacking on these arguments, but that effort falters for the same reasons that GGI Glass's motion does.

Thus, the Court will grant Adotta's motion, deny GGI Glass's motion as to Garcia's negligence claim but grant it as to his negligence-per-se claim, and deny Rand's motion. And the Court will enter judgment accordingly.

## I.    Background

Over six years ago, several companies were renovating office space for a law firm in D.C. *See* ECF No. 52-2 at 2–3. Rand Construction was the general contractor for the project. *See id.*; *see also* ECF No. 54-3 at 1. In turn, Rand subcontracted the installation of glass partitions to Europrojects International, which does business as Adotta America. *See* ECF No. 54-3 at 1; ECF No. 52-3 at 2. But Adotta does not manufacture glass, so it hired GGI Glass Distribution to produce and deliver glass "to the job site." ECF No. 52-3 at 2–3. And to move the panels that GGI Glass delivered, Adotta hired Move-It-All LLC, *see id.*, where German Cruz Garcia began working in 2016, *see* ECF No. 52-6 at 2.

The building under renovation had a loading dock that Adotta would reserve from Rand for glass deliveries.  ECF No. 52-3 at 11.  GGI Glass was scheduled to drive glass from New Jersey to the job site for an early morning delivery on January 15, 2019, so Adotta confirmed that it could use the loading dock that morning.  *See id.*; ECF No. 52-4 at 4–5.  Before GGI Glass's driver began the trip that day, the company's "loading crew" secured the glass panels on the moving truck with "straps."  ECF No. 52-4 at 2.

Garcia was "in charge" of the Move-It-All team waiting for the driver at the job site.  ECF No. 52-6 at 3, 6–7.  For reasons that remain unclear on this record after briefing, the GGI Glass truck did not have "access to park" at the loading dock when it arrived.  ECF No. 55-3 at 5.  According to Garcia, the driver instead backed into an alley and parked there.  ECF No. 54-7 at 9.  GGI Glass, though, says that the driver did so only after the "moving crew" and the "building's security personnel" told him "to move the truck multiple times."  ECF No. 52-5 at 2.  In any event, Adotta's project manager—who was not at the job site when this delivery occurred—said that she never "imagine[d]" that deliveries would happen in that alley, which she described as a "transit area" with an "uneven surface."  ECF No. 52-3 at 2, 4, 12.  And the record contains conflicting evidence on whether Garcia pointed out to the driver that he had parked on a slope.  *Compare* ECF No. 52-7 at 2 (Garcia asserting in response to interrogatory that he "told the driver several times that if he did not level the truck, it would cause the glass pieces to fall"), *with* ECF No. 56-2 at 26 (Garcia asserting in deposition that he "never" noticed that the truck was parked on a slope until after the glass fell).

With his crew, Garcia began removing the glass from the parked truck.  GGI Glass's driver released the straps securing the panels, *see* ECF No. 56-2 at 22, and told the Move-It-All team which glass "need[ed] to be unloaded," ECF No. 52-6 at 7, 9.  After successfully unloading the

glass from one side of the truck, Garcia's team began removing panels from the other side.  *See id.* at 7; ECF No. 56-2 at 17.  But when the driver unhooked the second strap, Garcia—who was "in charge of holding the glass"—heard "a really loud crash and the sound of glass."  ECF No. 52-6 at 10.  That is "all [he] can remember" other than the glass being on top of him.  *See id.*

About three years later, Garcia sued GGI Glass and Adotta for negligence and negligence per se.  *See* ECF No. 1-2 ("Compl.") ¶¶ 14–53.  He also stylized several liability theories—for example, "inherently dangerous condition"—as separate claims, but the Court dismissed them because those theories are not causes of action.  *See* Minute Order of May 2, 2022; Minute Order of Feb. 6, 2024.  Garcia later disclosed his proposed "expert in the field of workplace safety," who planned to testify about "the duties" that "Defendants owed to" Garcia and how they breached them.  ECF No. 29 at 4.  In late 2024, however, the Court granted GGI Glass's and Adotta's motions to exclude that testimony because the expert's conclusions were unreliable.  *See generally* ECF No. 46.

Both GGI Glass and Adotta move for summary judgment.  *See* ECF Nos. 52, 53.  So does Rand, the general contractor against whom GGI Glass filed a third-party complaint in early 2023.  *See* ECF Nos. 20, 55.  That complaint alleges that Rand is on the hook for any liability that GGI Glass may have to Garcia because Rand failed "to properly and correctly schedule, coordinate[,] and supervise the delivery of the glass panels."  ECF No. 20 ¶ 18; *see also id.* ¶¶ 17–21 (asserting claims for "Common Law Indemnification" and "Contribution").  But Rand contends that GGI Glass is not liable to Garcia in the first place, so the indemnification and contribution claims fall with Garcia's negligence claims.  *See* ECF No. 55-1 at 7–11.  Garcia opposed only GGI Glass's motion—and only partially so, because he "concedes his negligence per se claim."  ECF No. 56 at

12.  As for Adotta's motion, Garcia "submits on the record" and does not contest that request for summary judgment.  ECF No. 57 at 1.

## II.    Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" if it could affect the outcome of the litigation under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the Court must "view the evidence in the light most favorable to the [nonmovant],"—here, Garcia—"draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations."  *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020) (citation omitted).  But in opposing summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  So if the evidence that the nonmovant relies on is "'merely colorable' or 'not significantly probative'" such that no reasonable factfinder could find for that party based on the evidence, then "summary judgment may be granted."  *Bradley v. D.C. Pub. Schs.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016) (quoting *Anderson*, 477 U.S. at 249–50).  Thus, although at summary judgment the Court does not weigh the evidence or find the facts, the Court must decide whether the nonmovant's evidence is probative enough that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249; *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

### III.    Analysis

#### A.    Applicable Law

Because the Court sits in diversity jurisdiction, it applies the District of Columbia's choice-of-law rules.  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014).  Those rules call for "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute."  *Id.* (citation omitted).  As the parties implicitly agree in their briefing, the District has that relationship here.  The accident and injury happened in D.C., which is also where the "relationship" of all the parties "is centered" since the construction project took place there.  *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) (internal quotation marks and citation omitted).  And neither Garcia's Virginia residency nor the incorporation of GGI Glass and Adotta in New Jersey, *see* Compl. ¶¶ 2–4, suggests that another state has a greater interest in this D.C.-centered incident.

Under District of Columbia law, "a claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011).  The first inquiry asks "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct," *id.* (citation omitted), and is "entirely a question of law that must be determined only by the court," *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (citation omitted).  To make that call, the Court considers whether the plaintiff's injury was "reasonably foreseeable to the defendant."  *Hedgepeth*, 22 A.3d at 793 (internal quotation marks and citation omitted).  If the injury was—and if the defendant deviated from the duty owed—then a plaintiff establishes a negligence claim so long as he also shows "a direct and substantial causal relationship between" that "breach" and his "injuries."  *Erie Ins. Co. v. W.M. Barr & Co.*, 523 F. Supp. 3d 1,

10 (D.D.C. 2021) (quoting *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005)).
Still, a plaintiff who contributes to his own injury by unreasonably exposing himself to the danger
typically may not recover under D.C. law. *See C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d
242, 263 (D.D.C. 2007); *see also, e.g.*, *Stehn v. Cody*, 962 F. Supp. 2d 175, 178 (D.D.C. 2013)
("contributory negligence can act as a complete defense to the defendant's liability for negligence"
(citation omitted)).

The doctrine of negligence per se allows plaintiffs to "rely on a statute or regulation as
proof of the applicable standard of care." *Iacangelo v. Georgetown Univ.*, 595 F. Supp. 2d 87, 91
(D.D.C. 2009) (quoting *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996)). But not any
statutory or regulatory provision will do. Instead, four things must be true: (1) the statute or reg-
ulation "is meant to promote safety"; (2) "the plaintiff is a member of the class to be protected by
the statute" or regulation; (3) "the statute imposes specific duties" on "the defendant"; and (4) the
statute or regulation provides "specific guidelines to govern behavior" that do not just "repeat the
common law duty of reasonable care." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039–
40 (D.C. 2014) (citations omitted).

### B.    Adotta Is Entitled to Summary Judgment on Garcia's Claims

Garcia seems to have waived the white flag against Adotta. His response to the company's
motion for summary judgment is two sentences, contests none of Adotta's arguments, and states
that he "submits on the record." ECF No. 57 at 1. But "a motion for summary judgment cannot
be 'conceded' for want of opposition," so Adotta must still show that "summary judgment is war-
ranted." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (citation omitted).
That said, the Court will not craft arguments and "put flesh on [their] bone" for Garcia—especially
because it is not "eager to second guess the decisions" that "counsel" makes about "which

arguments to counter and which to leave unanswered." *Kirkland v. McAleenan*, No. 13-cv-194 (RDM), 2019 WL 7067046, at *25 n.17 (D.D.C. Dec. 23, 2019) (internal quotation marks and citations omitted).

Because Adotta satisfied any duty that it owed to Garcia, the Court will grant its motion. Garcia's theory of negligence is that the GGI Glass truck should have been on a flat rather than sloped surface—*i.e.*, that it should have been on the loading dock (or perhaps another available level platform). Even if Adotta had a duty to provide a safe unloading space, the undisputed facts show that Adotta exercised reasonable care in securing such an area. Adotta's project manager "got actual confirmation at the job site"—that is, from the "Rand superintendent" in charge of the loading-dock schedule—that the loading dock would be available for delivering the glass that fell on Garcia. ECF No. 54 at 6; ECF No. 54-6 at 13–14. The Court may "consider" this "fact undisputed"—at least "for purposes of" Adotta's "motion"—because Garcia does not "properly address" it. Fed. R. Civ. P. 56(e)(2); *see also Winston & Strawn*, 843 F.3d at 507.

That undisputed fact entitles Adotta to summary judgment. Despite "bear[ing] the burden of proving" a "deviation from" the "applicable standard of care," Garcia identifies no evidence suggesting that Adotta had any duty beyond exercising reasonable care in obtaining a safe unloading area for GGI Glass and the Move-It-All crew. *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 507 (D.C. 2023) (citation omitted). And the evidence shows that Adotta did just that by reserving the loading dock and receiving confirmation from Rand. After all, nothing suggests that Adotta had reason to doubt this confirmation from the general contractor—or reason to think that the GGI Glass driver would park on uneven ground. On this record, then, holding Adotta liable for this accident would effectively impose strict liability. That result would depart from

settled principles of negligence law, so the Court will enter summary judgment for Adotta on Garcia's negligence claim.

His negligence-per-se theory against Adotta falters too. Again, Garcia says nothing about this claim when responding to Adotta's motion. And he affirmatively disclaims it when opposing GGI Glass's. *See* ECF No. 56 at 12 ("Plaintiff concedes that he is unable to successfully present a negligence per se claim without the testimony of his expert witness . . . ."). True, Garcia *could* press a theory of negligence per se against Adotta but not GGI Glass. But he chose not to, and the record shows that summary judgment for Adotta is warranted on this claim too.

To reiterate, Garcia bears the burden of establishing duty, breach, and causation. *See KS Condo*, 302 A.3d at 507. And while a theory of negligence per se allows plaintiffs to use "a statute or regulation as proof of the applicable standard of care" if certain conditions are met, *see Night & Day Mgmt.*, 101 A.3d at 1039 (citation omitted), the doctrine does not otherwise alter that burden. To the contrary, Garcia "has the burden" of "identify[ing] a particular law or regulation designed to promote safety," as well as showing that he "is a member of the class to be protected" and that the provision "imposes specific duties of care and protection on" Adotta. *Curran v. Wells Fargo Bank, N.A.*, No. 20-cv-392 (CRC), 2021 WL 6753480, at *7 (D.D.C. Mar. 11, 2021) (quoting *Samuels v. Safeway, Inc.*, 391 F. Supp. 3d 1, 3 (D.D.C. 2019)). Adotta, as explained, exercised reasonable care in securing a safe place for Garcia's crew to unload the glass. Garcia has not identified any statutory or regulatory provision establishing a standard of care requiring Adotta to do more than that. And neither the Court nor Adotta must comb through all potentially relevant statutes and regulations to "create" from whole cloth a negligence-per-se theory for a plaintiff who has disclaimed one. *Kirkland*, 2019 WL 7067046, at *25 n.17 (citation omitted). Declining that boundless task is different from treating as conceded an unopposed motion for summary judgment.

*Cf. Winston & Strawn*, 843 F.3d at 505, 507.  Instead, the Court acknowledges Garcia's burden as a plaintiff, holds him to it, and concludes that no "reasonable jury" could "find in his favor on one or more essential elements of his claim." *Brett v. Brennan*, 404 F. Supp. 3d 52, 60 (D.D.C. 2019) (citation omitted).[1]

For all these reasons, the Court will grant Adotta's motion and enter judgment for it on both claims.

### C.     GGI Glass Is Entitled to Summary Judgment in Part

#### 1.     Summary Judgment Is Warranted as to Garcia's Negligence-Per-Se Claim

Garcia opposes GGI Glass's motion for summary judgment, but only as to the negligence claim.  As discussed, the Court cannot treat as conceded a *motion* for summary judgment when the nonmovant fails to oppose it.  But GGI Glass is entitled to summary judgment on Garcia's negligence-per-se claim for many of the same reasons that Adotta is.  Garcia bears "the burden" of, among other things, "identify[ing] a particular law or regulation designed to promote safety." *Curran*, 2021 WL 6753480, at *7 (citation omitted).  And after GGI Glass contended that Garcia "failed to identify any . . . statute or regulation that governed [its] conduct" and thus did not meet

---

[1] Although the Court will not craft arguments for a plaintiff who declines to make them, it notes that D.C.'s Industrial Safety Act—which Garcia mentions in his complaint, *see* Compl. ¶ 46—provides no statutory hook for his negligence-per-se theory.  That statute requires "[e]very employer" to "furnish a place of employment which shall be reasonably safe for employees." *Presley v. Com. Moving & Rigging, Inc.*, 25 A.3d 873, 883 (D.C. 2011) (quoting D.C. Code § 32-808(a)).  But as the Court suggested in its memorandum opinion excluding Garcia's expert witness, *see* ECF No. 46 at 14, this statutory standard effectively "repeat[s] the common law duty of reasonable care" and is thus too generalized to "establish a standard for negligence *per se* purposes." *Silbert-Dean v. WMATA*, 721 F.3d 699, 703 (D.C. Cir. 2013) (citation omitted).  More still, Adotta lacked the necessary "control or custody of" Garcia or his "place of employment," so this statutory duty does not attach.  D.C. Code § 32-802(1).  Garcia worked for Move-It-All, not Adotta.  And as the undisputed evidence shows, Adotta did not control the worksite; it needed to go through Rand to reserve the loading dock, and that area was still unavailable despite Adotta receiving confirmation before the delivery.  *See* ECF No. 54 at 6; ECF No. 54-6 at 13–14.

that burden, *see* ECF No. 52-1 at 23, Garcia did not even try to rebut this argument or point to any statutory or regulatory provisions.  So again, no reasonable jury could find that he carried his burden on this essential element of his claim.  And by "fil[ing] an opposition brief yet" choosing not to "respond" to GGI Glass's "arguments specific to certain claims," Garcia "waive[d]" any "argument" to the contrary.  *Mosleh v. Howard Univ.*, No. 19-cv-339 (CJN), 2022 WL 898860, at *15 n.6 (D.D.C. Mar. 28, 2022) (citation omitted).  Given that explicit waiver, "the Court does not believe that the limitation from *Winston & Strawn*" about treating unopposed *motions* as conceded "applies to this situation."  *Id.*  Any other rule would permit litigants to shift to courts the task of developing arguments opposing summary judgment—and would undercut the "premise" that represented parties "know what is best for them."  *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation omitted).  Because that outcome would clash with "the principle of party presentation," *id.*, and because no reasonable jury could find that Garcia carried his burden on his negligence-per-se claim, the Court will enter summary judgment for GGI Glass on that claim.[2]

### 2.    Summary Judgment Is Not Warranted as to Garcia's Negligence Claim

Garcia's negligence claim against GGI Glass is different.  His theory on this score is that GGI Glass's driver negligently parked the delivery truck on a sloped surface, breaching the duty to exercise reasonable care in delivering the glass and proximately causing his injuries.  ECF No. 56 at 10–12.  In this way, Garcia pursues his negligence claim under the doctrine of respondeat

---

[2] The same reasons that the D.C. Industrial Safety Act would not provide a statutory duty for a negligence-per-se claim against Adotta also apply to any such claim against GGI Glass.  That duty tracks too closely to the "common law duty of reasonable care," so it does not "set forth specific guidelines to govern behavior"—*i.e.*, the kind that would work for negligence per se.  *Silbert-Dean*, 721 F.3d at 703 (internal quotation marks and citation omitted).  And like Adotta, GGI Glass—whose role was delivering its glass to the job site—lacked the necessary control over Garcia as an employee or over the place of employment.

superior—a theory of "vicarious liability" that holds employers liable for "negligent acts of their employees committed within the scope of their employment." *Blair v. District of Columbia*, 190 A.3d 212, 225 (D.C. 2018) (internal quotation marks, citation, and brackets omitted); *see also* Compl. ¶¶ 29–33 (alleging "vicarious liability" because "GGI [Glass] is responsible" for its driver's actions). GGI Glass does not challenge that aspect of the claim by arguing, for example, that its driver was acting outside the bounds of his employment. Instead, GGI Glass contends that three shortcomings entitle it to summary judgment: (1) GGI Glass owed no duty to Garcia; (2) Garcia needs—but lacks—expert testimony to establish the standard of care and deviation from it; and (3) Garcia was contributorily negligent because he saw that the truck was not level before unloading the glass. *See* ECF No. 52-1 at 11–21, 23–26. But none shows that GGI Glass is entitled to judgment as a matter of law based on the undisputed facts, so summary judgment is inappropriate.

### a. GGI Glass Owed a Duty to Garcia

GGI Glass "owed a duty of reasonable care under all the circumstances to" Garcia and the unloading crew from Move-It-All. *District of Columbia v. Shannon*, 696 A.2d 1359, 1366 (D.C. 1997). The "injury that befell" Garcia—GGI Glass's panels striking him after falling off the company's delivery truck—"was reasonably foreseeable" because Move-It-All was there *to remove* the glass from that truck. *Hedgepeth*, 22 A.3d at 793 (internal quotation marks and citation omitted); *see also* ECF No. 52-1 at 8 ("Adotta hired Move-It-All to manage the unloading of the glass at the job site."). Phrased differently, the "relationship between" Garcia and GGI Glass—coupled with "the scope of" GGI Glass's "undertaking"—confirms that the "scope of [the] duty" included exercising reasonable care as to Garcia's safety. *Hedgepeth*, 22 A.3d at 794 (citation omitted). The delivery plan contemplated that someone other than GGI Glass would remove the glass. After

all, GGI Glass disclaims any "responsib[ility] for unloading" the glass after parking the truck, *see* ECF No. 52-1 at 7, and acknowledges that it "train[s]" its "truck driver[s]" on "how to properly park the truck so that the materials . . . can safely be unloaded," *see* ECF No. 52-4 at 4.  The company thus *knew* (or should have known) that whoever removed the glass could be harmed by risky conduct—whether tying the straps too loosely, stacking the glass improperly, or parking on a slope.  In other words, it was not only "foreseeable but actually was expected" that Garcia (or someone like him) would unload the glass panels and bear the risk of injury if GGI Glass's conduct made that predictable activity more dangerous.  *Shannon*, 696 A.2d at 1366.

None of GGI Glass's rejoinders helps it escape that conclusion.  For starters, the company underscores that its "driver was not involved at all in unloading the glass" at the job site.  ECF No. 52-1 at 12–13 (describing this "fact[]" as "not in dispute"); *see also, e.g.*, ECF No. 59 at 2 (arguing that "the GGI driver was not involved in unloading" and that GGI's "only obligation was to drive the glass to the worksite").  But emphasizing this point only confirms that the company had a duty to exercise reasonable care in preparing the glass for unloading.  Because GGI Glass had no role (or a limited role) in the unloading process, it *expected* (or at least should have expected) that someone else would take the glass off the truck—just as the owner of a "playground" naturally expects "that young children w[ill] use" a "slide" located there.  *Shannon*, 696 A.2d at 1366.  Indeed, GGI Glass might have a better case if it *did* spearhead the unloading process, because then the involvement of an unloading crew might have been less foreseeable.

GGI Glass also points to the standard for deciding "whether a party who performs services under a contract for" another "assumes a duty to an unrelated third party."  ECF No. 52-1 at 15. But reciting a legal rule does not show that it warrants the relief sought.  Under D.C. law, a party "render[ing] services to another" that "he should recognize as necessary for the protection of a

third person" may be liable to "the third person" if the party's "failure to exercise reasonable care increases the risk" of "physical harm." *Presley v. Com. Moving & Rigging, Inc.*, 25 A.3d 873, 889 (D.C. 2011) (quoting Restatement (Second) of Torts § 324A (1965)).  And the nature of the services that GGI Glass provided meets these criteria.  Those services, recall, "obligat[ed]" GGI Glass "to drive the glass to the worksite" so that someone else—Garcia and the Move-It-All team— could unload it.  ECF No. 52-1 at 16 n.2.  Because that undertaking required a third party to perform a predictable and specific task that would become more dangerous if GGI Glass did not do its job properly, GGI Glass should have recognized that the third-party unloading team could suffer injury if GGI Glass's conduct increased the risk of such harm.  Just ask its own deponent, who said that the "driver" was "responsible for placing the truck at a location where the materials can be safely unloaded."  ECF No. 52-4 at 4.  This case, then, involves a company that agreed "to perform services within its field of expertise" and thus "acquired a duty to foreseeable plaintiffs" like Garcia "to perform these services with reasonable care."  *Long v. District of Columbia*, 820 F.2d 409, 418 (D.C. Cir. 1987).

Finally, GGI Glass leans on *Presley Commercial Moving & Rigging, Inc.*, but that case does not undermine the conclusion that it owed a duty of reasonable care to the individuals whom it expected to unload glass from its truck.  The plaintiff in *Presley* was a construction worker who fell while assembling a cooling tower.  25 A.3d at 877.  He sued a company that had contracted "to serve as a contract compliance consultant" for the State Department, whose building the plaintiff's employer had been renovating.  *Id.* at 878.  But that company's obligations, the D.C. Court of Appeals reasoned, did not impose on it the "more extensive duties of a safety engineer or general construction manager."  *Id.* at 889–90.  And "the contractual relationships" for the project showed that other entities "had operational charge of construction," so the plaintiff did not "rel[y]" on the

defendant "to patrol and control the worksite"—duties "beyond the scope" of its "limited undertaking." *Id.* at 891. *Presley*, in other words, rejected an effort to impose wide-ranging duties on a defendant engaged in a contractually limited undertaking. But Garcia neither tries nor needs to do that. He does not say that GGI Glass "owed a duty to . . . ensure that" the "worksite" employed "proper safety procedures" to "protect him." *Id.* at 883. Instead, Garcia's negligence theory rests on a far more limited duty tethered to the job that GGI Glass signed up for: exercise reasonable care when delivering glass that third parties will unload. That is no different than recognizing, for instance, that a company's "workman" who "insecurely" repairs a "light" fixture at a "grocery store" can create "liability" for the company if the fixture "falls upon and injures" a customer. Restatement (Second) Torts § 324A cmt. c (October 2024 update).

At bottom, GGI Glass focuses on its lack of control over the jobsite generally. And true enough, GGI Glass may not be at fault for the loading-dock issue. But just because GGI Glass likely had no role in reserving the loading dock does not mean that it had no duty to the team that it knew (or should have known) would unload the company's glass from its truck. For example, had GGI Glass sloppily stacked the glass and strapped the panels together with unreliable materials, it could not say that it had no duty to the unloading team even though it lacked other responsibilities at the job site. So although the loading-dock problem might speak to whether GGI Glass *satisfied* its duty by parking on a reasonably flat and available surface—an issue the Court does not address—the company's control over the construction site (or lack thereof) does not drive the duty question here.

In short, GGI Glass owed a duty to Garcia, so summary judgment on that ground is unwarranted.

### b.        Garcia Does Not Need Expert Testimony

GGI Glass says that it prevails anyway because Garcia needs but does not have an expert to "articulate the standard of care" and its breach. ECF No. 52-1 at 17. This argument invokes the rule under D.C. law that "expert testimony" is required "to establish" the "standard of care" if "the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Hill v. Metro. Afr. Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001) (citation omitted). Framed more simply, can jurors "grasp the issues without expert assistance"? *KS Condo*, 302 A.3d at 508 (citation omitted). If they can—that is, if "common sense and everyday experience" can guide them on the negligence inquiries—then the lack of expert testimony will not doom a plaintiff's claim. *Jimenez v. Hawk*, 683 A.2d 457, 462 (D.C. 1996).[3]

Jurors can do just that by "apply[ing] the general duty of reasonable care" to decide whether GGI Glass's driver negligently parked on a slope before an unloading team removed panels of glass. *Hill*, 779 A.2d at 909 (citation omitted). This is not rocket science. Rather, "both the danger"—glass falling off the truck onto someone unloading it—"and the means of preventing injury"—among other precautions, parking on a reasonably flat surface to prevent the glass from sliding off—"were obvious." *Id.* True, the jury may need to answer some hard questions—say, how steep a slope is too risky such that parking on it deviates from the reasonable-care standard? But drawing those lines falls "within the realm of common knowledge and everyday experience";

---

[3] The idea that a plaintiff sometimes needs expert testimony "almost certainly do[es] not reflect a departure from the standard of the reasonable prudent person." Dan B. Dobbs *et al.*, The Law of Torts § 127 n.12 (April 2025 update). Rather, this rule recognizes the "need for knowledgeable testimony" when a jury cannot grasp "what the reasonable person would do in" a specific situation—*i.e.*, a situation involving scientific, technical, or professional matters beyond the understanding of the typical layperson. *Id.*

people can "grasp" that the degree of a slope and the type of object affect how likely the object is to fall in a dangerous way. *KS Condo*, 302 A.3d at 508 (citation omitted). For example, even though the size of a hole in a playground slide might dictate how dangerous the slide is—and might present a line-drawing exercise for the jury—a plaintiff need not provide "expert testimony" on a "special standard of care for maintainers of playgrounds." *Shannon*, 696 A.2d at 1365. That inquiry, like the one here, is "grounded in ordinary judgments of reasonableness" suitable for lay jurors. *KS Condo*, 302 A.3d at 509. So although expert testimony might have helped Garcia, it is not essential for his negligence claim.

No doubt, older decisions suggested that the D.C. Court of Appeals had been applying the expert-testimony requirement "to a wide variety of situations." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991). Even cases that "on first blush" seemed "to be within the realm of common knowledge" had triggered this requirement, especially when they "involve[d] issues of safety, security and crime prevention." *Briggs v. WMATA*, 481 F.3d 839, 845–46 (D.C. Cir. 2007) (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006)). But as explained, the standard-of-care issue here fits the paradigm set out in *Hill*: "both the danger" and "the means of preventing injury" were "obvious," so an expert is unnecessary. 779 A.2d at 909.

Still, even if older caselaw created some ambiguity, the D.C. Court of Appeals has recently described the expert requirement more narrowly. Less than two years ago, that court's *KS Condo* decision discussed this requirement as an *exception* to the rule that in "the mine-run of cases, questions of negligence are within the realm of common knowledge and everyday experience." 302 A.3d at 509 (internal quotation marks and citation omitted). Claims "that *require* expert testimony are rare," the court explained, "[o]utside the realm of professional malpractice cases." *Id.* (internal quotation marks and citation omitted); *see also Jenkins v. Red Coats, Inc.*, No. 24-cv-

0502, 2025 WL 1969500, at *2 (D.C. July 17, 2025) ("Indeed, '[w]hile expert testimony is required to establish a duty of care in some negligence cases, there are plenty of other cases where it is not required.'" (quoting *KS Condo*, 302 A.3d at 508)). Garcia's claim, of course, is not such a malpractice claim. It is much more straightforward: a company responsible for delivering glass for unloading failed to exercise reasonable care because it parked the truck on uneven ground. A juror "does not need to be a structural engineer" to assess the applicable standard of care and potential deviations from it. *KS Condo*, 302 A.3d at 512. Instead, he "need only observe the world around" him and use common knowledge. *Id.* And because the Court's role is to "predict how the District of Columbia courts would rule" on this issue *now*—not how they would have ruled years ago— *KS Condo* confirms that Garcia need not present an expert on the standard of care. *Siegel v. Mazda Motor Corp.*, 835 F.2d 1475, 1478 (D.C. Cir. 1987).

Arguing to the contrary, GGI Glass thinks too little of jurors and asks too much of the expert-testimony rule. The company insists that "an average lay person" cannot "determine the proper safety parameters for parking a commercial truck and the extent of what constitutes a safe slope to park for the unloading of glass." ECF No. 52-1 at 19. But it never explains why a jury could not use common sense and ordinary experience to assess what parking precautions would have satisfied the reasonable-care standard—just as a jury can determine without an expert whether forgone repairs "caused [a] wall to collapse," *KS Condo*, 302 A.3d at 511, or whether a property owner acted negligently by not "seal[ing] a tank containing flammable materials," *Hill*, 779 A.2d at 909–10 (discussing *Jimenez*, 683 A.2d at 462). GGI Glass fares no better by contending that the "fact that training is necessary for" its drivers shows that "methods of parking a commercial truck carrying" glass are "not commonly known." ECF No. 52-1 at 20. To start, the premise is unsupported; just because "there is no dispute that GGI's truck drivers *are* trained" does not mean

that training is *necessary*. *Id.* (emphasis added). More to the point, a juror can understand negligent activity even if the defendant needed training to do his job. Becoming a teacher, after all, requires training, but a lay jury could grasp that leaving young children unattended with scissors could deviate from the standard of care. Finally, GGI Glass insists that unloading "[m]ultiple heavy glass panels cannot be compared to" a "simple object that may fall out of" an unlevel "vehicle." ECF No. 59 at 3. But a juror can grapple with negligence questions without having encountered an identical factual scenario. For example, he might draw on experiences with smaller objects rolling off slanted surfaces to reason that larger ones are less likely to fall and thus require fewer precautions—or that they are more likely to hurt someone if they do fall and thus require more precautions. Either way, the bottom line is that lay jurors can "grasp the issues" here, even if they have not personally unloaded heavy glass. *KS Condo*, 302 A.3d at 508 (citation omitted).

The cases that GGI Glass relies on do not help its cause. One is a non-binding decision applying a different state's law to hold that a trial court "did not abuse its discretion in *admitting* the expert testimony of a" "supervisor in the glass industry" with "experience in training employees in loading and unloading glass crates." *Grabowski v. City Ctr. Dev. Co. of Buffalo, L.P.*, 707 N.Y.S.2d 584, 585–86 (N.Y. App. Div. 2000) (emphasis added). So that court's unexplained statement that this testimony "concern[ed] an area of technical knowledge," *see id.* at 586 (citing New York caselaw), says little about how D.C. courts would decide under D.C. law whether an expert was *required* here.

The other two cases apply the right jurisdiction's law but are unpersuasive analogies for two reasons. First, each was decided well before *KS Condo*, in which the D.C. Court of Appeals described the expert-testimony rule as inapplicable in "the mine-run of cases." 302 A.3d at 509. And those decisions reflect that timing. *Briggs*, for instance, described the expert requirement as

a default rule subject only to "a partial exception" when "the subject matter is within the realm of common knowledge and everyday experience." 481 F.3d at 845 (citations omitted). But *KS Condo* flips this characterization by explaining that most negligence cases *are* "grounded in ordinary judgments of reasonableness," so it is "rare" for expert testimony to be necessary outside the context of "professional malpractice." 302 A.3d at 509 (internal quotation marks and citation omitted). *Katkish*, for its part, did not describe the requirement as broadly. *See Katkish v. District of Columbia*, 763 A.2d 703, 705–06 (D.C. 2000). But that opinion includes no hint that it viewed the expert-testimony requirement as narrowly as the D.C. Court of Appeals did in its more recent discussion. *KS Condo*, then, offers the best guidance—especially because it appeared to cabin *Katkish* to that case's "specific circumstances." 302 A.3d at 510.

Second, *Briggs* and *Katkish* do not support GGI Glass's argument even on their own terms. The former held that a plaintiff needed expert testimony to establish "a universal standard of 'adequate' lighting within a temporary construction walkway" and to show when removing "barriers erected to protect pedestrians" is permissible. *Briggs*, 481 F.3d at 846. These issues, the D.C. Circuit explained, involved "engineering determinations" exceeding "common knowledge" and "everyday experience." *Id.* But a lay jury need not understand "engineering" principles—or the decisions that go into a "construction" project, *see id.* at 845–46—to decide whether parking a truck on a slope is negligent when the driver knows (or should know) that people will be unloading heavy materials. Similarly, understanding how (and how quickly) a municipality should "abate" a "leaning tree" in a "non-emergency situation" is a far cry from understanding whether a truck parked on unlevel ground poses a risk to a crew unloading glass from it. *Katkish*, 763 A.2d at 706. Answering that question in *Katkish* would have required grasping "whether the likelihood of the tree falling is related to the condition of the tree, the street, or other circumstances." *Id.* And

without that understanding, a lay jury could only guess what governmental response would have been reasonable.  Not so for Garcia's claim, which—to repeat—presents a situation in which "both the danger" of the slanted glass-carrying truck "and the means of preventing injury" by parking on a reasonably level surface "were obvious."  *Hill*, 779 A.2d at 909.

In sum, Garcia does not need expert testimony to present his negligence claim to a jury, so his failure to provide that testimony is no basis for summary judgment.

### c.     GGI Glass Has Not Shown that Garcia's Purported Negligence Warrants Summary Judgment

GGI Glass concludes by contending that Garcia was contributorily negligent and thus cannot recover even if GGI Glass was also negligent.  *See* ECF No. 52-1 at 23–26.  Typically, "questions" of "contributory negligence must be decided by the trier of fact" rather than the Court at summary judgment.  *Whiteru v. WMATA*, 25 F.4th 1053, 1058 (D.C. Cir. 2022) (quoting *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997)).  But GGI Glass claims this case is different because Garcia, when responding to an interrogatory, says that he "told the driver several times that if he did not level the truck, it would cause the pieces to fall."  ECF No. 52-1 at 25 (emphasis omitted) (quoting ECF No. 52-7 at 2).  That he did—and not just once.  *See also* ECF No. 54-8 at 7 (asserting the same when responding to interrogatory from Adotta).

But Garcia also said the opposite in his deposition, so because GGI Glass's motion turns on these interrogatory answers, this disputed factual issue bars summary judgment in its favor. Responding to whether he "ask[ed] the GGI driver to move the truck," Garcia said "[n]o": "I didn't say anything, because we didn't notice that [the] truck was on an unlevel surface at that point." ECF No. 56-2 at 26.  More directly, he claimed that he "never" perceived that the truck was on unlevel ground until after the glass fell on him.  *Id.*  GGI Glass points out—accurately—that these deposition answers are "in direct opposition" to those given elsewhere.  ECF No. 59 at 3.  In doing

so, though, the company just highlights why the Court cannot grant summary judgment on contributory negligence: factual disputes like this one—including "factual contradictions"—"create genuine issues for a jury to resolve." *Felton v. Haris Design & Constr. Co.*, 417 F. Supp. 2d 17, 22 (D.D.C. 2006).

Perhaps recognizing that problem, GGI Glass raises a new argument in reply. The company seems to suggest that Garcia, as an experienced "supervisor," should have known that "all glass deliveries and unloading should take place at the loading dock." ECF No. 59 at 3. And by not telling a higher up that the loading dock was unavailable—or maybe by not "refus[ing] to unload" the glass—Garcia negligently contributed to his own injury. *Id.* Possibly, but GGI Glass "waived" this argument by "advanc[ing]" it "for the first time in its reply brief." *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95 (D.D.C. 2012). This waiver rule applies forcefully here because GGI Glass chose to press a *different* theory of contributory negligence in its motion, *see* ECF No. 52-1 at 23–26 (focusing on Garcia's *actual* knowledge and the interrogatory response), and Garcia unsurprisingly responded only to that theory, *see* ECF No. 56 at 12–13. Admitting as much, GGI Glass describes its new theory as an "*addition to* the argument made in [its] motion." ECF No. 59 at 3 (emphasis added). So the Court will not address this new theory of contributory negligence.

Thus, GGI Glass has not shown that it is entitled to summary judgment on this ground.

## D.    Rand Is Not Entitled to Summary Judgment

Rand's motion for summary judgment requires much less unpacking. In seeking that relief as to GGI Glass's third-party claims, Rand aligns itself with the company suing it. Garcia cannot "recover from GGI [Glass] on a theory of negligence" or "negligence *per se*," Rand contends, so "GGI [Glass] cannot recover from Rand." ECF No. 55-1 at 7, 9. But for the reasons discussed

above, GGI Glass has not shown that it is entitled to summary judgment on both claims.  And Rand offers nothing new.  Instead, it reiterates GGI Glass's argument that Garcia needs but lacks "an expert to testify to the national industry standard of care."  *Id.* at 7–8.  The case that Rand adds, moreover, does not directly address the expert-testimony requirement.  *See Casey v. McDonald's Corp.*, 880 F.3d 564, 569–570 (D.C. Cir. 2018).  Rather, the plaintiffs' problem in *Casey* was that their "expert failed to identify a specific national standard of care" requiring "McDonald's to have a security guard on duty"—not necessarily that they failed to provide an expert on issues beyond a jury's grasp.  *Id.* at 569.  As explained, though, the D.C. Court of Appeals reiterated after *Casey* that the "mine-run" of negligence cases "are grounded in ordinary judgments of reasonableness." *KS Condo*, 302 A.3d at 509.  And Garcia's theory of negligence is one to which a jury can "apply the general duty of reasonable care," *Hill*, 779 A.2d at 909 (citation omitted), without needing an expert to "establish[] a special standard of care" specific to parking trucks loaded with glass panels, *Shannon*, 696 A.2d at 1365.  So Rand has not shown that Garcia cannot recover from GGI Glass. And because Rand's motion for summary judgment rests on that theory, the Court will deny it.[4]

## IV.   Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Adotta's Motion for Summary Judgment, ECF No. 53, is **GRANTED,** and judgment is **ENTERED** for Adotta.  It is further **ORDERED** that Rand's Motion for Summary Judgment, ECF No. 55, is **DENIED**.  It is further

---

[4] Rand spends part of its motion explaining why Garcia's negligence-per-se claim fails. *See* ECF No. 55-1 at 9–10.  It does, as the Court explained, so Garcia cannot recover from GGI Glass for that claim.  Rand thus need not worry about derivative liability on that score.  But GGI Glass does not pin its indemnification and contribution claims to specific claims that Garcia advances.  Instead, the third-party complaint seeks relief from Rand for "*any* liability" that GGI Glass has to Garcia.  *See* ECF No. 20 ¶ 19 (emphasis added); *see also id.* ¶ 21.  And because liability for the negligence claim remains on the table, the third-party complaint against Rand is still viable.

**ORDERED** that GGI Glass's Motion for Summary Judgment, ECF No. 52, is **GRANTED IN PART**, to the extent that it seeks summary judgment on Garcia's negligence-per-se claim, and judgment is **ENTERED** for GGI Glass on that claim.  It is further **ORDERED** that GGI Glass's Motion for Summary Judgment, ECF No. 52, is **DENIED IN PART**, to the extent that it seeks summary judgment on Garcia's negligence claim.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 6, 2025